UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ROY STILTNER, | ) | |
| | ) | |
| Petitioner, | ) | No. 5:13-CV-203-ART-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED |
| ALAN BROWN, Warden, | ) | DISPOSITION |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Roy Stiltner pleaded guilty to murder in 1986 and was sentenced to life in prison.  He filed a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 in 2013, which was dismissed and re-filed in 2014.  The deadline for filing such a petition expired in 1997.  The issue before this Court is whether Stiltner's case warrants equitable tolling of AEDPA's[1] one-year statute of limitations[2] on account of mental impairment.  This Court held an evidentiary hearing on the issue in May 2015 and received post-hearing briefing by the parties.  Although Stiltner is illiterate and appears to be intellectually disabled, he was represented by an attorney and assisted by a jailhouse lawyer during the limitations period.  He also filed two state post-conviction motions prior to his section 2254 petition.  Existing case law holds that, under these facts, equitable tolling is unavailable because Stiltner was not pursuing his rights diligently.  Therefore, the undersigned recommends that Stiltner's claim for equitable tolling be denied and that his petition be dismissed.

---

[1] Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214.
[2] *See* 28 U.S.C. § 2244(d)(1).

# I.  Factual Background

On March 4, 1986, a Fayette County grand jury returned a two-count indictment charging Stiltner with one count of murder and one count of being a persistent felony offender in the first degree.  D.E. 10-3 at 14.  On May 7, 1986, Stiltner waived further proceedings and entered a plea of guilty on the murder count.  D.E. 10-3 at 16-18.  Stiltner was sentenced to life imprisonment. D.E. 10-3 at 20-21.  Nothing in the filings of either party suggests that Stiltner appealed his judgment of conviction.  Rather, Stiltner waited more than 18 years to file a motion for post-conviction relief.

## A.  Filings

In December 2004, Stiltner, with the assistance of a fellow prisoner, filed a motion under Rule 11.42 of the Kentucky Rules of Criminal Procedure.  D.E. 1 at 3.  The Fayette Circuit Court dismissed the 11.42 motion in an order that denied equitable tolling.  D.E. 10-4 at 17.  On October 4, 2007, Stiltner, through his jailhouse lawyer, filed a notice of appeal.  *Id.* at 18.  On March 3, 2009, the Kentucky Court of Appeals affirmed the order of the Fayette Circuit Court. *Stiltner v. Comm.*, No. 2007-CA-002048-MR, 2009 WL 102975 (Ky. Ct. App. Jan. 16, 2009); D.E. 10-6 at 1-7.  Stiltner did not seek discretionary review before the Kentucky Supreme Court.

Stiltner then filed a motion pursuant to Kentucky Rule of Civil Procedure 60.02 on November 13, 2012.  D.E. 10-6 at 8-18.  On March 25, 2013, that motion was denied as untimely.  *Id.* at 25-28.  Stiltner filed a notice of appeal (*id.* at 35), and on February 28, 2014, the Kentucky Court of Appeals affirmed the order of the Fayette Circuit Court.  *Stiltner v. Comm.*, No. 2013-CA-000731-MR, 2014 WL 811836 (Ky. Ct. App. Feb. 28, 2014).

On April 18, 2013,[3] almost simultaneously with filing the appeal of his Rule 60.02 motion, Stiltner filed his first federal section 2254 petition.  D.E. 1.  The Court dismissed that first petition without prejudice as premature because Stiltner failed to satisfy the exhaustion requirement.  D.E. 16.  Stiltner filed the current section 2254 petition on April 15, 2014 (D.E. 17), most likely as a result of learning that his pending state-court matter was finally resolved on February 28, 2014.  The claims in the current petition are identical to the claims in the petition at Docket Entry 1.  *Compare* D.E. 1 *with* D.E. 17.

Stiltner alleges two grounds for habeas relief.  First, he claims he was "denied his Sixth and Fourteenth Amendment rights" when "trial counsel advised him to plead guilty while he remained 'mentally retarded.'"  D.E. 17 at 6.  Second, he claims he was "denied his Sixth and Fourteenth Amendment [rights] when the trial court failed to advise him on the record of his right to an appeal and appointment of appellate counsel to perfect his appeal if he chose a trial." D.E. 17 at 8.  Regarding the timeliness of his petition, Stiltner gave the following explanation:

> Petitioner Roy Stiltner (Stiltner) is unable to read or write and suffers from mental retardation which is cause for this Honorable Court to grant him "equitable tolling."  Stiltner is (66) years old and was born in Grundy, Virginia.  According to records Stiltner completed two (2) years of school. . . .  Stiltner was admitted to the Eastern State Hospital (a mental hospital) before he turned (15) years old.  According to Stiltner Electric Shock Therapy was administered to him at that time.  Stiltner was admitted and spent approximately twelve years[4] at Eastern State Hospital before he was eventually released.
>
> Stiltner is submitting two psychological evaluations/reports that support[] his mental retardation claim.  Stiltner's mental retardation is a circumstance that has stood in his way of timely filing a habeas petition within one year.  He has no education and cannot read or write.
>
> These are circumstances that are beyond Stiltner's control and this Court should grant Stiltner "equitable tolling" of the one year statute of limitations

---

[3]   April 18 is the filing date under the mailbox rule.  *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (citing *Houston v. Lack*, 487 U.S. 266, 270-72 (1988)); D.E. 1 at 15.  Stiltner's petition was docketed on April 22, 2013.

[4] The medical records Stiltner submitted from Eastern State Hospital record that he was admitted on November 25, 1959, at age fourteen, and discharged as AWOL on July 18, 1966.  D.E. 86-1, -4.  The final record notes that Stiltner had escaped, allegedly committed a crime, and was currently in jail.  No records before the Court address whether Stiltner returned to Eastern State Hospital after this date.  D.E. 86-4.

> contained in 28 U.S.C. § 2244(d)(l).  Stiltner's records demonstrate that he has
> never attained competency from his childhood to the present date.  This is also
> supported by Dr. Drogan's evaluation of Stiltner in 2006. . . .

D.E. 17 at 15.  Stiltner's petition was accompanied by two psychological evaluations that

indicated he suffered from intellectual disability.  D.E. 1-5 & 1-6.

      In response to this Court's order to show cause why his petition should not be dismissed

as untimely, D.E. 7, Stiltner submitted a brief, a school record, and affidavits from two fellow

prisoners.  D.E. 8.  The author of the brief identifies himself as "Stiltner's roommate" who, "out

of the goodness of his own heart, has taken it upon himself to try to help Stiltner."  *Id*. at 4 n.4.

The brief explains that Stiltner attended two years of school, but never learned to read or write.

*Id*. at 2.  Stiltner, it says, was committed to a mental hospital from age 14 to age 24, where he

received electroshock therapy that "caused him severe memory loss."  *Id*.   According to the

brief, "Stiltner cannot communicate well with other people (or inmates) and does not have the

financial backing of family to hire counsel or pay anyone else to help in preparing legal

motions."  *Id*. at 3.  On account of this lack of education and resources, understanding the statute

of limitations "would be beyond his comprehension."  *Id*. at 4.  Instead, the brief argues,

Stiltner's "inability to read or write, coupled with his mental retardation as evidenced by Dr.

Thomas Colley & Dr. Drogan's [sic] test results from both 1961 & 2006" constitute

"extraordinary circumstances" that "ought to result in equitable tolling" of the AEDPA deadline.

*Id*. at 10.

      Stiltner's then-roommate and jailhouse lawyer Timothy Fancher submitted an

unnotarized affidavit pursuant to 28 U.S.C. § 1746 explaining that he believes Stiltner "has an IQ

of less than (66) and cannot read or write and is severely handicapped due to mental retardation."

D.E. 8-2.  These circumstances, he said, made it "impossible for Stiltner to have known of the

one year time limit for filing a habeas corpus petition in the federal court." *Id*. Another inmate named Scot Gaither submitted a second unnotarized affidavit, again pursuant to 28 U.S.C. § 1746, which said, "It is easy to recognize that Roy has a very low I.Q. and is very limited in his conversation capabilities. . . .  His vocabulary is very limited as are his learning capabilities." D.E. 8-3.  The prison student-enrollment record described Stiltner's reading level as grade 1.8 and his math level as 2.1.  D.E. 8-1.

Based on these filings, the Court appointed counsel and ordered an evidentiary hearing, *see* D.E. 22, which occurred on May 19, 2015.

**B. Evidentiary Hearing**

At the evidentiary hearing in Lexington, Kentucky, the court heard testimony from Dr. Eric Drogin, two of Stiltner's fellow prisoners, and Stiltner.  The Court summarizes this evidence below, but has thoroughly considered the entire record.

Dr. Drogin is both an attorney and a clinical and forensic psychologist.  D.E. 1-6; 84 at 10.  On September 7, 2006, he conducted an "initial examination" of Stiltner at the behest of Stiltner's appointed counsel, Dennis Burke of the Kentucky Department of Public Advocacy ("DPA").  D.E. 1-6; 84 at 11.  According to Dr. Drogin's one-page letter to Mr. Burke, Dr. Drogin administered five tests which together indicated that Stiltner functioned within "the moderate to severe range of neuropsychological impairment," and that he was not faking it.  D.E. 1-6.  Dr. Drogin opined that Stiltner's test results, which included a Full Scale IQ of 62, reflected "levels of cognitive impairment [that] may significantly interfere with [his] capacity to appreciate the nature and consequences of the proceedings against him, or to participate rationally in his own defense."  *Id*.  It was therefore "important to obtain further documentation" of Stiltner's "intellectual and behavioral functioning over time" to determine whether he was

able to adequately "participate in plea negotiations during the period in question." *Id*. As Dr. Drogin confirmed at the hearing, the question underlying his examination of Stiltner was whether he was competent to stand trial at the time of his guilty plea in 1986. D.E. 84 at 11.

At the hearing, Dr. Drogin reviewed the tests he had given Stiltner in 2006. He explained they indicated Stiltner had "diminished cognitive capacity" and "poor short-term memory performance," which he deemed "particularly striking." D.E. 84 at 28. Dr. Drogin was careful to explain that his interaction with Stiltner "never ripened into a full-blown evaluation." *Id*. at 45. He "did not conduct a clinical and forensic interview," *id*., and he had "not diagnosed Mr. Stiltner with anything," *id*. at 49.

The next testimony came from a fellow-inmate of Stiltner, David Blair. Blair explained that from 1994 to 1998 he shared a room with Stiltner. D.E. 84 at 65. Blair was then released, but returned to prison and saw Stiltner "every now and then" from 2002 or 2003 to 2004. *Id*. While they were roommates, Blair, who had become something of a jailhouse lawyer, began drafting a post-conviction motion for Stiltner. *Id*. at 67-68. In 1996, Blair filed a request on behalf of Stiltner to obtain his legal records. *Id*. at 69. Blair's work culminated in the Ky. R. Crim. P. 11.42 motion that was not actually filed until December 2004. *See id*. at 68; D.E. 10-3 at 27; *Stiltner*, 2009 WL 102975, at *1.

Blair explained how he began working on Stiltner's case:

Q. Now, you became involved in Mr. Stiltner's case, is that correct?
A. Yes, ma'am.
Q. And did that first start somewhere between 1994 and 1998?
A. Yes, ma'am.
Q. How did you become involved?
A. I was out there in the bull pen, which is an area out in the yard, and I was talking to another inmate about his case. And about that time, I turned around. Roy says, "I [want you to] get something done on mine." And I said, "Okay." And we just -- from there on I, you know . . .
Q. Did he tell you what he meant by "get something done on mine?"

6

> A. No, ma'am.  He just – that's what he said.
> Q. Did he tell you what to do or how to start working on his case?
> A.  No, ma'am.
> Q. What steps did you take?
> A. I filed an 11.42 for him.
> Q. And what did you allege in the 11.42?
> A. His mental stability.

D.E. 84 at 67-68.

Blair described Stiltner as a simpleton, someone with the intellect of a two-year-old or five-year-old child.  *Id*. at 82.  He said Stiltner had a very short attention span and seemed uninterested in discussing his case and incapable of understanding legal processes and procedural requirements.  *Id*. at 74-76.  Stiltner never paid Blair or told him what to do in his legal filings. *Id*. at 76.

Blair explained that Stiltner had little interest or comprehension regarding his legal filings:

> Q. Okay.  Did he ever look at the motions you filed?
> A. He looked at them, but he -- he just walked away when he looked at them.
> Q. Did he ever ask you any questions about them?
> A. No, no.
> Q. Did he ever tell you or direct you to put anything in them?
> A. No.
> Q. Did he ever ask you anything that would resemble at all a legal question?
> A. No.
>
> ****
>
> Q. Did he have any input in anything that you filed?
> A. No, not really.
> Q. Did he specifically ask you to do anything in regards to his case?
> A. No.
> Q. If you tried to explain stuff to him, how did he react?
> A. He would just stand around and look up in the air and stuff like that.  And then he would talk a little something or other and then walk on off.  He was -- you know, it was like he wasn't interested.
> Q. Did he ever seem to understand what you were trying to tell him?
> A.  No, he didn't.

*Id*. at 70-74.  In other words, it appears Blair became Stiltner's jailhouse lawyer almost entirely on his own initiative and did his work with no direction from Stiltner.

The next witness was fellow-inmate Scot Gaither, who filed Stiltner's 2013 federal habeas petition.  D.E. 84 at 88.  Gaither testified that he met Stiltner in 2010.  Stiltner's roommate at the time was Tim Fancher, who was working on Stiltner's case.  *Id*. at 89.  In late 2011 or early 2012, Fancher asked Gaither to assist with the legal research on Stiltner's case.  *Id*.  Gaither ended up filing Stiltner's 60.02 motion and his habeas petition at Fancher's direction after Fancher left.  *Id*. at 90, 101-02.  According to Gaither, Stiltner never directed him to do anything and did not seem to understand what Gaither was doing regarding his case.  *Id*. at 92, 95.  Gaither testified that Stiltner was so intellectually handicapped and had such poor memory that he could not even order items from the prison commissary without help from another inmate.  *Id*. at 94.  The process involved filling out a simple form, but Stiltner, after years of ordering the same thing every time, could not complete the form without assistance.  *Id*. at 112-13.  Gaither said Stiltner reminded him of an eight-year-old child "on some days" and "about a four-year-old child" on other days.  *Id*. at 96.

Finally, Stiltner testified.  Stiltner did not recall David Blair or Tim Fancher filing anything on his behalf, and said that "maybe" Scot Gaither had.  D.E. 84 at 129.  He did not recall ever meeting with an attorney since his incarceration.  *Id*. at 137-38.  The only attorney he remembered was the one who assisted him with his guilty plea in 1986; he did not accurately remember the names of other attorneys who had been appointed to represent him.  *Id*. at 148-50, 172-73.

The documentary record contains other evidence relevant to the equitable tolling question.  Stiltner relies heavily on a psychological examination report from 1961, when he was

a fifteen-year-old committed to a psychiatric institution.  D.E. 1-5 & 10-3 at 1-2.  The examiner assigned Stiltner a Weschler IQ score of 68 and a Raven IQ score of 54—scores that placed him "well within the mental defective range."  D.E. 1-5 at 1.  Although Stiltner did not appear to be schizophrenic or suffering from an "organic brain disturbance," he was "developing" what the examiner called a "sociopathic personality" that manifested in aggressive tendencies.  *Id*. at 1-2. The report's final "diagnostic impression" was that Stiltner had "[m]oderate mental deficient intelligence" and "sociopathic personality pattern."  *Id*. at 2.

Other pieces of documentary evidence relate to the assistance Stiltner received before the AEDPA deadline.  Docket Entry 43-8 contains a form requesting the factual contents of Stiltner's presentence investigation report ("PSR").  The form indicates that Stiltner was "informed" of these "factual contents" on May 9, 1995, and contains Stiltner's signature.  The form also contains a notation from an institutional parole officer on July 7, 1995, indicating that Stiltner had filed no objections to those contents.  *See also* D.E. 43-8 at 2 (memorializing and granting Stiltner's request for a copy of his PSR on May 5, 1995).

Docket Entry 10-3 contains a letter from Tina Scott, a paralegal with the DPA, requesting a copy of Stiltner's judgment and plea agreement from the Fayette Circuit Court.  "I am requesting these documents," the author says, "in order for them to be reviewed for post[-]conviction relief."  D.E. 10-3 at 23.  The letter is dated February 19, 1996.  *Id*.  A Kentucky court docket sheet also records that this "[r]equest from DPA for copy of Final Judg[ment]" was filed on February 21, 1996.  D.E. 10-3 at 11.

The Court was also given for in camera review some medical release forms that Stiltner signed on May 22, 1996 and March 26, 1997.  Both forms, now filed in the record, indicate that

public defender Tim Riddell and his paralegal Tina Scott were Stiltner's legal representatives. D.E. 90.

## II.  Discussion

**A.  Absent Equitable Tolling, Stiltner's Claims would be Time-Barred.**

As a preliminary matter, Stiltner does not dispute that, absent equitable tolling, his petition would be time-barred.  D.E. 86 at 12; 89 at 1.

AEDPA subjects § 2254 petitions to a one-year limitation period.  28 U.S.C. § 2244(d). The statute provides that the limitation period begins to run from the date a petitioner's judgment becomes final, or from one of three other triggering events not applicable here.  *See* 28 U.S.C. § 2244(d)(1)(A).  A judgment of conviction becomes final for the purposes of § 2244(d)(1)(A) when either direct review concludes or the time for seeking such review expires.  *See Linscott v. Rose,* 436 F.3d 587, 591 (6th Cir. 2006).  A prisoner whose conviction becomes final prior to AEDPA's effective date "ha[s] one additional year after the Act's effective date to file a habeas petition."  *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002).

Nothing in the filings of either party suggests that Stiltner filed any direct appeal, so it appears Stiltner's judgment became final for purposes of section 2254 collateral review on June 6, 1986.  *See* Ky. R. Crim. P. 12.04(3) ("The time within which an appeal may be taken shall be thirty (30) days after the date of entry of the judgment or order from which it is taken."). Because Stiltner's conviction became final prior to AEDPA's effective date, the statute of limitations began to run on April 24, 1996, and expired one year later on April 24, 1997.  *Cook*, 395 F.3d at 519.

Stiltner's state filings did not affect this deadline.  Under § 2244, the limitation period is subject to statutory tolling for "[t]he time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). Stiltner did file two state post-convicting motions, but both were filed after the AEDPA deadline. Neither would affect the statute of limitations in this matter. The filing of a collateral petition can only pause the statute of limitations under the tolling provision of section 2244(d)(2); once that clock has expired, it cannot be revived by a subsequent filing. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Defendant did not appeal his conviction, and did not file his first state post-conviction motion until 2004. Stiltner is therefore not entitled to statutory tolling. His AEDPA deadline was April 24, 1997. Absent other tolling, this petition, filed April 15, 2014, would be untimely by 6,200 days.

**B. Legal Framework for Equitable Tolling**

Because § 2244(d)(1)'s one-year statute of limitations is not jurisdictional, it is subject to equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003). But courts apply this doctrine "sparingly." *Solomon v. United States,* 467 F.3d 928, 933 (6th Cir.2006). The party seeking to toll the limitations period bears the burden of demonstrating an entitlement to it. *Robertson v. Simpson,* 624 F.3d 781, 784 (6th Cir. 2010).

A movant "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The bar to equitable tolling is a high one. "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Jurado v. Burt*, 337 F.3d 638, 643 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brookes Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

In certain circumstances, a petitioner's mental deficiencies can constitute the sort of "extraordinary circumstance" that satisfies the *Holland* test and warrants equitable tolling.  As the Federal Habeas Manual observes, to warrant equitable tolling,

> the courts are in general agreement that the petitioner's mental or physical condition must have risen to the level of an *extraordinary circumstance*; that the petitioner *diligently pursued* his rights as reasonably could be expected given his mental impairment; and that the petitioner's mental impairment was the *cause* of the untimely filing.

Federal Habeas Manual § 9A:104.

The leading case on this subject from the Sixth Circuit is *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011).  The court in that case found that an evidentiary hearing was warranted when the petitioner alleged that his "lengthy history of psychiatric disorders and treatment," including numerous hospitalizations and continuing medication "for paranoid schizophrenia and other psychoses" prevented him from filing on time.  *Id*. at 740.  The court held that:

> a petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations.  To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations.  In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations.  Rather, a causal link between the mental condition and untimely filing is required.

*Id*. at 742.[5]  Under this framework, "mental incompetence is not a *per se* reason to toll a statute of limitations."  *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008).  "Illness—mental or physical—tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period."  *Price*, 119 F. App'x at 726.  Furthermore, "an

---

[5] Although *Ata* uses the phrase "mental incompetence," the case law as a whole makes clear that a finding of incompetence under the *Dusky* standard is not a necessary prerequisite to equitable tolling.  *See, e.g.*, *Price v. Lewis*, 119 F. App'x 725, 726 (6th Cir. 2005).

12

inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations." *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002).

The Sixth Circuit's causation standard is consistent with the approach of other Courts of Appeal.  For example, in *Sosa*, which the Sixth Circuit cited in *Ata*, the court noted that equitable tolling will generally apply "only in cases of profound mental incapacity," such as when a petitioner has been institutionalized or adjudicated mentally incompetent.  *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004); *see also McCray v. Oxley*, 553 F. Supp. 2d 368 (D. Del. 2008) (applying equitable tolling for a prisoner who had been adjudicated incompetent and whose competency "was still an issue at present").

To assess *Holland* tolling claims based on mental incompetence, the Ninth Circuit has developed a more fine-grained test that has been used more than once by district courts in this Circuit and implicitly approved by the Sixth Circuit.  The court in *Bills v. Clark* assessed the competency tests federal courts employ in various circumstances and adopted what it described as a two-part test to apply to AEDPA mental disability tolling claims:

> (1) *First,* a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, *see Holland*, [560 U.S. at 649], by demonstrating the impairment was so severe that either
>
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second,* the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.  *See id.*

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010).

The *Bills* court further fleshed out the second prong, explaining that it addresses "whether the petitioner's impairment was a but-for cause of any delay:"

> [A] petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure. The petitioner therefore always remains accountable for diligence in pursuing his or her rights.

*Id.* at 1100. The court stressed that "[t]he availability of assistance is an important element to a court's diligence analysis." *Id.* at 1101. The availability of legal assistance will often be "highly relevant to the question of whether a petitioner's mental condition made it impossible to file a timely petition." *Id.*

The *Bills* court boiled the entire inquiry into a four-step process:

> In practice, then, to evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Id.* at 1100-1101.

In *Carneal v. Crews*, then-Chief Judge Russell of the Western District of Kentucky adopted the *Bills* framework and applied it to a petitioner who alleged his paranoid schizophrenia prevented him from meeting the AEDPA deadline. *Carneal v. Crews*, No. 5:09CV-32-R, 2011 WL 2710222 (W.D. Ky. July 12, 2011), *aff'd*, 510 F. App'x 347 (6th Cir. 2013). Judge Russell observed that the Sixth Circuit's law on this subject "remains largely undeveloped and offers very little in the way of precedential guidance." *Id.* at *10. Having surveyed case law from other circuits, he concluded that the *Bills* framework was "well-developed and articulate" and

was "consistent with and a logical expansion of the Sixth Circuit's causal-connection requirement." *Id*. at *10-11.  Judge Russell applied the four-part *Bills* test and concluded under the fourth step that the petitioner was not sufficiently diligent to warrant equitable tolling.  *Id*. at *14.

The petitioner in *Carneal* appealed, and the Sixth Circuit found Judge Russell's opinion so "well-reasoned and thorough" that writing its own opinion "would be duplicative and serve no useful purpose."  *Carneal v. Crews*, 510 F. App'x 347, 347-48 (6th Cir.) *cert. denied*, 134 S. Ct. 144 (2013).  The Court of Appeals, ruling post-*Ata*, affirmed the district court "upon the reasoning employed by that court in its opinion."  *Id*. at 348.  Judge Russell applied the *Bills* test again, in a post-*Ata* opinion, and found tolling unwarranted due to lack of diligence.  *Scott v. Pancake*, No. 5:08CV-51-R, 2012 WL 470031, at *6-7 (W.D. Ky. Feb. 13, 2012).

This Court agrees with Judge Russell that the *Bills* framework is useful and fully compatible with Sixth Circuit case law.  In fact, in light of the appellate opinion in *Carneal*, this Court would be remiss in not applying it.  Accordingly, the Court will now assess Stiltner's equitable tolling claim in light of *Ata* and *Bills*.

## C.  Application

1.  **Stiltner satisfies the first prong of *Bills*.**

The first prong of the two-prong *Bills* test for equitable tolling requires the petitioner to show his mental impairment was "so severe that either (a) petitioner was unable rationally or factually to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing."  *Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010).  The court in *Bills* further emphasized that this test is met if "*either* [the petitioner] did not understand his need to timely file *or* his mental impairment made

him unable to take steps to effectuate that filing.  In either case, if the mental impairment is so severe that it causes the untimely filing, the petitioner is entitled to equitable tolling" under prong one.  *Id*. at 1100 n.2.

Stiltner satisfies both of these conditions.  The essentially unchallenged exhibits and testimony in this case indicate that Stiltner did not understand his need to timely file. Furthermore, his mental impairment was so severe he was "unable personally to prepare a habeas petition and effectuate its filing."  *Id*. at 1100.

Because the *Bills* court offered a four-part inquiry to assist courts in applying its two-prong test, this Court will assess Stiltner's mental impairment in light of that inquiry.  The first three prongs require this Court to:  "(1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own."  *Id*. at 1100-1101.  The fourth step corresponds with the second prong of the *Bills* test; the Court will address it in the next section.

Under the first step of the four-part *Bills* inquiry, Stiltner has made "a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing."  The court's findings supporting the order for an evidentiary hearing indicate Stiltner has made this showing.  D.E. 22.

Having held an evidentiary hearing, the Court also concludes from the record as it stands that Stiltner has "satisfied his burden that he was in fact mentally impaired."  Under the third step of the *Bills* inquiry, it appears that this disability, coupled with Stiltner's illiteracy, limited vocabulary, and memory problems, made it impossible for him to file—during the limitations

period—a habeas petition on his own.  The Court finds the following evidence persuasive on these points.

The medical evidence almost unanimously paints a dim view of Stiltner's cognitive capabilities.  First, Stiltner's 1961 psychological exam found him to have an IQ "well within the mental defective range."  D.E. 10-3 at 1.  Second, Stiltner submitted additional sealed records that record multiple intelligence tests performed during Stiltner's period of commitment from 1959 to 1966 that indicate he is intellectually disabled.  D.E. 86-1, -2, -3, -4.  Third, Dr. Drogin's initial examination indicated that Stiltner continued to suffer "moderate to severe . . . neuropsychological impairment" of the type "typically associated with Mental Retardation."  D.E. 1-6.  Although Dr. Drogin did not conduct a "full-blown evaluation" of Stiltner, D.E. 84 at 45, Dr. Drogin testified that his preliminary tests indicated Stiltner "was an individual of substantially limited intellectual capacity."  *Id.* at 39.  The Court was not given any contrary medical records or testimony.

In addition to the medical evidence, two live witnesses, Blair and Gaither, described Stiltner as having a child-like mind incapable of understanding legal requirements and processes.  They testified that it was jailhouse lawyers—including themselves—who initiated Stiltner's filings and wrote letters on his behalf.  D.E. 84 at 69-72, 88-91.  They provided specific anecdotes to illustrate Stiltner's cognitive deficiencies, such as his inability to order coffee from the prison commissary or to write anything besides his own name.  D.E. 84 at 94-96.  Stiltner's prison educational records also indicate a low level of intellectual functioning.  D.E. 8-1.  Finally, Stiltner's own testimony and demeanor were consistent with that of a person with moderate intellectual disability and memory problems who did not understand his need to timely file or possess the ability to personally prepare and file his petition.

17

The Court acknowledges the existence of some contrary evidence in the record.  First, Stiltner's competency was not challenged as part of his 1986 conviction.  In fact, this Court is not aware of any mental evaluation of Stiltner between his 1966 discharge from the mental hospital and his 2006 evaluation by Dr. Drogin.  Second, the state court that accepted his guilty plea found that the plea was knowingly and voluntarily made.  D.E. 10-3 at 19.  Third, Stiltner was able to hold a steady job in prison as a janitor and take certain educational classes.  However, Blair testified that this janitorial job was simple and Stiltner merely followed instructions.  D.E. 84 at 66-67.

Considering the totality of the evidence, the Court is persuaded that Stiltner suffers intellectual disability.  Although the only expert witness, Dr. Drogin, had not *diagnosed* Stiltner, he testified that his preliminary exam suggested Stiltner had "some real problems" with his memory and cognitive function.  D.E. 84 at 28.  Stiltner's past medical records and the credible testimony of Blair and Gaither support this finding.  Indeed, the fact that Stiltner is at least mildly intellectually disabled is not disputed.

> 2.   **Stiltner fails to meet the second *Bills* prong because he had assistance.**

Having satisfied the first three steps of the *Bills* inquiry, Stiltner's prayer for equitable tolling hinges on the fourth step—whether, taking into account the availability of legal assistance, he showed diligence during the limitations period.  *Bills*, 628 F.3d at 1101.  This is a close question.  But Stiltner's access to legal assistance during the limitations period shatters the "causal link" between his disability and his failure to timely file.  *See Ata*, 662 F.3d at 742.

As discussed above, Stiltner's AEDPA limitations period spanned from April 24, 1996 to April 24, 1997.  The record establishes that Stiltner had legal assistance during this period.

First, Stiltner was assisted by jailhouse lawyer David Blair. *Bills* recognizes that "the existence of such help" and whether and how the prisoner avails himself of such help are "highly relevant" factors in the diligence analysis. *Bills*, 628 F.3d at 1101. The record contains a form requesting the factual contents of Stiltner's PSR, submitted in May 1995. D.E. 43-8. Although this request pre-dates the limitations period, it indicates that Stiltner was getting legal help during this time frame. It appears from Blair's testimony that he filed this letter. D.E. 84 at 69. Blair testified that he was Stiltner's roommate from 1994 to 1998, and that he worked on filing a Ky. R. Crim. P. 11.42 petition for Stiltner during this period. *Id*. at 65-68.

Second, Stiltner had appointed counsel from the DPA during the limitations period. The record contains a letter from Tina Scott of the DPA requesting legal records, dated February 19, 1996. D.E. 10-3 at 23; *see also* D.E. 10-3 at 11. This letter establishes that Stiltner was represented by counsel during at least part of the limitations period, and that his appointed counsel was reviewing his record for "post[-]conviction relief" purposes. The fact that Stiltner had counsel is buttressed by the existence of two medical release forms, both signed by Stiltner during the limitations period (dated May 22, 1996, and March 26, 1997), that name Timothy Riddell as "my attorney" along with Tina Scott. D.E. 90.

It therefore appears that Blair assisted Stiltner through the duration of the limitations period, and that Stiltner had DPA counsel from at least February 19, 1996, to at least March 26, 1997. Although Stiltner's disability made it practically impossible for him to file his own petition, the record reveals three legally knowledgeable individuals who were helping him on his case—whether he understood what they were doing or not—during the limitations period. Case law suggests that equitable tolling is unavailable under these circumstances.

For example, in *Plummer v. Warren*, the Sixth Circuit held that a petitioner's "severe physical disabilities" did not call for equitable tolling because the petitioner had used jailhouse lawyers to draft numerous legal filings. *Plummer v. Warren*, 463 F. App'x 501, 505-06 (6th Cir. 2012). "Because [the petitioner] was not doing her own legal work," the court explained, "her physical disabilities could not have impacted the timeliness of their filing." *Id*. at 506. In the same way, during the limitations period in this case, Stiltner was assisted by jailhouse lawyer David Blair and was represented by a public defender who requested his records. Stiltner's intellectual disabilities could not have affected the people who were working on his behalf.

Another instructive opinion from within this Circuit is *Bays v. Warden, Ohio State Penitentiary*, No. 3:08-CV-076, 2014 WL 29564, at *6-7 (S.D. Ohio Jan. 3, 2014). In that case, during the intellectually disabled petitioner's twenty years of incarceration, he had been represented by a succession of attorneys "all of whom knew his possible mental retardation was an issue." *Id*. at *6. The court found that the presence of counsel distinguished the case from *Ata*, in which the petitioner's "absence of counsel" was a significant factor. *Id*. at *7. "How," the court asked rhetorically, "could the mental incompetence of a litigant who has a competent attorney possibly excuse failure to meet a filing deadline?" *Id*. The *Bays* court was also skeptical that intellectual disability could ever toll the AEDPA deadline: "if mental retardation would excuse missing the statute of limitations, then the statute would never run for the mentally retarded because, by hypothesis, it has an onset before age 18 and is a permanent mental condition." *Id*.

Assistance such as that enjoyed by Stiltner, despite intellectual disability, is often found to be sufficient to deny tolling. This appears to be a common finding under the *Bills* test. For example, the court in *Robertson v. Cate* found no need to decide whether the petitioner was

severely mentally impaired.  Because he "had access to assistance" in the form of jailhouse lawyers, this "legal assistance from fellow inmates . . . in effect lifted any obstacle to filing." *Robertson v. Cate*, No. CV 12-633-GW (PLA), 2014 WL 10123435, at *11, 13 (C.D. Cal. Oct. 8, 2014) *report and recommendation adopted*, No. CV 12-633-GW (PLA), 2015 WL 4512310 (C.D. Cal. July 24, 2015).  Similarly, in *Stancle v. Clay*, the court denied equitable tolling under *Bills* when the petitioner—assumed for the sake of argument to be mentally incompetent—had "the continual assistance" of a jailhouse lawyer.  *Stancle v. Clay*, 692 F.3d 948, 959-60 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1465 (2013).  "Reliance on other inmates to prepare habeas filings or for any other legal efforts . . . is not extraordinary."  *Crawford v. Grounds*, No. ED CV 11-0993 RGK, 2013 WL 812108, at *5 (C.D. Cal. Jan. 15, 2013) (collecting cases to support this proposition), *report and recommendation approved*, No. ED CV 11-0993 RGK, 2013 WL 812068 (C.D. Cal. Feb. 22, 2013); *see also Forbess v. Franke*, 749 F.3d 837, 841-42 (9th Cir. 2014) (granting equitable tolling under *Bills* when nothing in the record suggested the severely mentally ill petitioner had legal assistance during the limitations period).[6]

Because Stiltner had competent people trying to help him during the limitations period, he cannot clear the bar for equitable tolling.

The Court acknowledges that the case law is not univocal on this point.  For example, the petitioner in *Jones v. Palmer* was similar to Stiltner.  Mr. Jones was illiterate, "mildly mentally retarded," and at age sixty-six had the cognitive skills of "an early elementary-school" student. *Jones v. Palmer*, No. 3:11-CV-00467-MMD, 2015 WL 56052, at *4 (D. Nev. Jan. 5, 2015).

---

[6] Stiltner's case is also distinguishable from cases in which an intellectually disabled petitioner actively attempted to employ the help of jailhouse lawyers, but was unable to do so.  *See Chatman v. Hill*, 585 F. App'x 726, 728 (9th Cir. 2014) (tolling the AEDPA deadline when the petitioner "repeatedly attempted to secure the assistance of other inmates, and was able to file only after securing such assistance"); *Williams v. Schmidt*, No. 3:10-CV-00025-TMB-DMS, 2011 WL 4071859, at *10 (D. Alaska Sept. 13, 2011) (tolling the AEDPA deadline when the petitioner "tried to get inmates to help him," but "the costs were prohibitive"); *cf. Bills*, 628 F.3d at 1101 (discussing how a diligent petitioner who warrants tolling may be unable to employ a jailhouse lawyer on account of the cost or extortion involved).

While incarcerated, Mr. Jones was assisted by seven jailhouse lawyers who made state and federal filings on his behalf. *Id*. at *1-2, 5. Mr. Jones was "completely dependent" on these inmates because, according to their affidavits, "he does not understand the legal process or legal terms at all despite other inmates trying to explain." *Id*. The court found that, in light of his mental impairments, he appeared to have exercised "reasonable diligence in pursuing his claims to the extent that he was capable," and thus warranted equitable tolling. *Id*. The *Jones* case is strikingly similar to Stiltner's and is favorable to his position. But, in light of this court's thorough review of the case law on this subject, it appears to be an outlier, particularly in comparison to other cases from this Circuit, and obviously is non-binding. *See, e.g.*, *Plummer*, 463 F. App'x at 505-06; *Bays*, 2014 WL 29564, at *6-7. Several of the cases discussed in the following section also support the proposition that the availability of legal assistance may disqualify a petitioner for equitable tolling.

   3. **Stiltner also fails to meet the second *Bills* prong because he was filing state post-conviction motions years before his federal habeas petition.**

There is another basis for finding that Stiltner was not diligently pursuing his rights. As already explained, Blair began helping Stiltner in 1995 with his post-conviction case. Stiltner, through Blair, eventually filed a Ky. R. Crim. P. 11.42 motion in December 2004. D.E. 10-3 at 27; *Stiltner*, 2009 WL 102975, at *1. The Rule 11.42 motion raises various claims on the basis that Stiltner was incompetent at the time of his arrest and conviction. D.E. 10-3 at 27-28. The motion specifically refers to the time Stiltner spent as a patient at Eastern State Mental Hospital. *Id*. at 28. The Rule 11.42 motion demonstrates that, in 2004, Stiltner had obtained legal assistance that enabled him to make court filings, and that Stiltner's jailhouse lawyer knew

Stiltner's mental health issues (as evidenced by his prior commitment to a mental hospital) could form a basis for pursuing post-conviction relief.

As a result of filing the *pro se* Rule 11.42 motion in 2004, the state court appointed an attorney to represent Stiltner in January 2005.  D.E. 10-3 at 38.  In March 2005 the appointed attorney, Dennis J. Burke, filed his notice of appearance.  D.E. 10-3 at 39.  It was Mr. Burke who then asked Dr. Drogin to conduct his September 2006 interview of Stiltner.  D.E. 10-3 at 3.  On June 5, 2007, Mr. Burke filed a supplemental pleading (including a motion for equitable tolling and a motion for a court-ordered mental competency evaluation) on Stiltner's Rule 11.42 motion. D.E. 10-4 at 1.  The supplemental pleading relies on Stiltner's records from Eastern State and Dr. Drogin's report.  *Id*. at 3.

The record therefore establishes the following facts:  (1) in 2004, Stiltner had a jailhouse lawyer—his roommate, working for free—who knew Stiltner had a plausible mental-health basis for post-conviction relief and who filed a post-conviction motion on that basis; (2) beginning in January 2005 Stiltner was also represented by appointed counsel; (3) beginning in September 2006, Stiltner's appointed counsel had access to Dr. Drogin's one-page report that indicated a "moderate to severe range of neuropsychological impairment," including IQ test results within the "Mental Retardation" range, D.E. 10-3 at 3; and (4) in 2007 Stiltner's appointed counsel was seeking equitable tolling of the state post-conviction statute of limitations on the basis of mental incompetency, *id*. at 4.  Nevertheless, Stiltner's federal habeas petition was not filed until April 2013—over eight years and three months after the filing of his Rule 11.42 motion, and more than five years and ten months after his appointed counsel moved for equitable tolling of his Rule 11.42 motion based on mental incompetency.

Even though these were state court proceedings, other courts have found that a delay in filing an untimely federal habeas application after making similar state filings demonstrates a lack of diligence.  For example, the petitioner in *Crawford v. Grounds* sought equitable tolling on the basis of being "mentally retarded and incompetent."  *Crawford v. Grounds*, No. ED CV 11-0993 RGK, 2013 WL 812108, at *6 (C.D. Cal. Jan. 15, 2013) *report and recommendation approved*, No. ED CV 11-0993 RGK, 2013 WL 812068 (C.D. Cal. Feb. 22, 2013).  The court found that even if the petitioner satisfied the first prong of the *Bills* test, he failed to show diligence when, as here, his jailhouse lawyer filed a state post-conviction petition alleging similar grounds over a year before raising the same claims in his federal habeas petition.  *Id.*

Courts have often found that the ability to file a state petition indicates that a petitioner is also able to file a federal petition.  *See, e.g.*, *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir.) (declining to toll the AEDPA deadline when the mentally impaired petitioner had filed multiple state court petitions), *cert. denied sub nom. Yow Ming Yeh v. Biter*, 135 S. Ct. 486 (2014); *McSwain v. Davis*, 287 F. App'x 450, 457 (6th Cir. 2008) (declining to toll the AEDPA deadline when the petitioner "was able to pursue both direct and collateral challenges to her conviction in the state courts notwithstanding her mental illness"); *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *reh'g granted, opinion modified*, 447 F.3d 1165 (9th Cir. 2006); *Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005); *Price v. Lewis*, 119 F. App'x 725, 726 (6th Cir. 2005) (collecting cases); *Smith v. Saffle*, 28 F. App'x 759, 760 (10th Cir. 2001); *Brown v. McKee*, 232 F. Supp. 2d 761, 768 (E.D. Mich. 2002) ("The exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity.").

Again, there is some disagreement in the case law.  For example, the Ninth Circuit recently reversed a district court's finding that a mentally impaired petitioner lacked diligence when the petitioner filed, through his jailhouse lawyers, multiple motions in state court prior to his federal habeas application.  *Jones v. Cate*, 590 F. App'x 701, 702 (9th Cir. 2015).  In a short memorandum opinion, the court explained:

> Jones filed multiple state habeas petitions and sought assistance from other inmates to draft correspondence, complete paperwork, and file prison grievances. Based on these filings, the district court found that Jones was able to seek assistance from others and that his lack of diligence, not his mental impairment, was the but-for cause of his failure timely to file.
>
> Rather, the only inference which arises is that he was incapable of asking for help in filing a federal habeas petition.  Such help was not offered with respect to a possible federal habeas petition until 2009.  Therefore, Jones's mental impairment was the but-for cause of Jones's failure timely to file.

*Id.*  Like the other *Jones* case discussed in part II.C.2, this case cuts in Stiltner's favor.  *See also Peterson v. Klee*, No. 2:12-CV-11109, 2014 WL 2894300, at *6-7 (E.D. Mich. June 25, 2014) (tolling the AEDPA deadline despite the fact that the petitioner "filed several motions in the state courts").  But again, based on this court's thorough review of the case law on this subject, *Jones* and *Peterson* are outliers.  Generally, the fact that a petitioner was able to file state post-conviction motions—even if he was completely dependent on jailhouse lawyers—will support a finding of lack of diligence under *Holland* and *Bills*.  *See, e.g.*, *Shearrod v. Smith*, No. 2:14-CV-14128, 2015 WL 4094417, at *5-6 (E.D. Mich. July 7, 2015 (declining to toll the AEDPA deadline when the petitioner with "mild mental retardation" had "over the years filed several post-conviction motions and appeals"); *Robertson*, 2014 WL 10123435, at *11, *13 (finding that obtaining legal assistance from other inmates lifts any obstacle to filing); *Hinton v. Klee*, No. 2:13-CV-10143, 2013 WL 6157925, at *3 (E.D. Mich. Nov. 21, 2013) (declining to toll the

AEDPA deadline when the mentally ill petitioner had filed eighteen civil rights complaints during the twelve-year period surrounding the AEDPA limitations period).

Stiltner has failed to establish sufficient diligence in pursuing his claims such as to wrrant equitable tolling.

### III. Conclusion and Recommendation

Although Stiltner has been severely mentally handicapped since childhood, it appears that during the AEDPA limitations period he received legal assistance from three named individuals. Additionally, Stiltner's federal habeas application was not filed until years after he asserted similar post-conviction claims in state court.  Under existing case law, these facts suggest that Stiltner's severe mental impairment was not the but-for cause of his failure to file his section 2254 petition on time.  Accordingly, the undersigned **RECOMMENDS** that the Petition (D.E. 17) be **DISMISSED** as time-barred under 28 U.S.C. § 2244(d).

This being a close case, although the undersigned believes the recommendation herein is correct, the Court **RECOMMENDS** that a certificate of appealability ("COA") be issued. Reasonable jurists could find it debatable whether the petition states a valid claim of the denial of a constitutional right and could find it debatable whether this Court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Kitchen v. Bauman*, No. 2:14-CV-76, 2014 WL 3809174, at *2 (W.D. Mich. Aug. 1, 2014) (granting a COA on a denied mental incompetence tolling claim); *Carneal*, 2011 WL 2710222, at *17 (same).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2254 Proceedings, Rule 8(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all

findings or recommendations for determination, *de novo*, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 2nd day of October, 2015.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**