UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | | |
|---|---|---|
| ROY STILTNER, | ) | |
| | ) | CIVIL ACTION NO. 5:13-203 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| DeEDRA HART, Warden | ) | |
| | ) | |
| Defendant | ) | |

*** *** *** ***

This matter is before the Court on the petition for a writ of habeas corpus (DE 17) filed by plaintiff Roy Stiltner pursuant to 28 U.S.C. § 2254. The magistrate judge has reviewed the petition and recommends (DE 183) that the Court deny it. He further recommends that the Court issue a certificate of appealability because of the difficulty and complexity of the case. Stiltner has filed lengthy objections. The defendant warden has filed a short objection, which argues only that the Court should not issue a certificate of appealability.

## I.    Background

In 1986, petitioner Stiltner pleaded guilty to murder in state court. He is currently serving a life sentence on that charge. (DE 17, Petition.) There is no dispute that he has an intellectual disability, which includes the inability to read or write.

He never directly appealed from the judgment sentencing him to life in prison. (DE 17, Petition at 3.) In 2004, however, with the help of a fellow prisoner, Stiltner filed a motion to vacate his sentence in Kentucky state court under Rule 11.42 of the Kentucky Rules of Criminal Procedure, asserting that his trial counsel – Gene Lewter – was

ineffective for failing to "raise the mental retardation defense." (DE 17, Petition at 3.)

Later, the trial court appointed the Department of Public Advocacy (DPA) to represent

Stiltner on his petition. (DE 10-4, App. at 1.) The DPA filed a supplement to the petition.

Nevertheless, the state trial court ultimately dismissed the motion, finding that the statute

of limitations should not be tolled and that even if it were, there was nothing in the record

to indicate that Lewter was ineffective. (DE 10-4 App. at 15.)

      Stiltner appealed to the Kentucky Court of Appeals, which affirmed the trial

court's decision. *Stiltner v. Com.*, No. 2007-CA-002048-MR, 2009 WL 102975, at *1

(Ky. Ct. App. Jan. 16, 2009). Stiltner did not appeal that decision to the Kentucky

Supreme Court, but he did file another motion before the state trial court. This time he

moved under Rule 60.02 of the Kentucky Rules of Civil Procedure for relief from the

court's judgment, in part arguing that his trial counsel was ineffective for permitting him

to plead guilty without first requesting a competency evaluation. (DE 10-6, App. at 8,

10.) The trial court denied that motion also. (DE 10-6, App. at 25.) Stiltner appealed. The

Kentucky Court of Appeals affirmed the order, *Stiltner v. Com.*, No. 2013-CA-000731-

MR, 2014 WL 811836, at *1 (Ky. Ct. App. Feb. 28, 2014), and Stiltner again did not

seek review by the state Supreme Court.

      He initially filed a petition for habeas corpus relief from this Court in 2013. (DE

1, Petition.)  In the petition, he asserted two grounds for vacating his conviction. First, he

asserted, as he did before the trial court, that his trial counsel was ineffective for advising

him to plead guilty to the murder charge "while he remained 'mentally retarded.'"

Stiltner also asserted a new ground for vacating his conviction, one that he did not raise

in state court. He asserted that the trial court erred in failing to advise him of the right to appeal if he went to trial and was convicted.

The first issue before this Court was whether Stiltner's petition was timely filed. Ten years after Stiltner was convicted, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). It became effective April 24, 1996. It generally requires that § 2254 petitions be filed within one year of the date that the petitioner's judgment becomes final. 28 U.S.C. § 2244(d)(1)(A). State prisoners like Stiltner, whose conviction was finalized before AEDPA became effective, were required to file any habeas petition within one year after AEDPA's effective date. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002). Thus, Stiltner's deadline to file a § 2254 petition was April 24, 1997. Again, he filed this petition in 2013.

This case was originally assigned to Judge Amul Thapar, who appointed counsel to represent Stiltner on this habeas petition. Judge Thapar referred the matter to the magistrate judge, who conducted an evidentiary hearing on whether the one-year limitations period should be equitably tolled for Stiltner because of his intellectual disabilities.

To be eligible for equitable tolling due to mental incompetence, a habeas petitioner must establish two things.

> (1)    First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

> (2)  Second, the petitioner must show diligence in
> pursuing the claims to the extent he could understand
> them, but that the mental impairment made it
> impossible to meet the filing deadline under the
> totality of the circumstances, including reasonably
> available access to assistance.

*Stiltner v. Hart*, 657 F. App'x 513, 521 (6th Cir. 2016) (quoting *Bills v. Clark*, 628 F.3d

1092, 1099-1100 (9th Cir. 2010)).

After the hearing, the magistrate judge determined that Stiltner had established the

first requirement:  this his mental impairment was an "extraordinary circumstance"

beyond his control. (DE 91, Recommendation.) The magistrate judge found that the

evidence presented at the hearing indicated that Stiltner's mental impairment was so

severe he could not understand the need to timely file a habeas petition and he was also

unable personally to prepare a habeas petition and file it. The magistrate judge

determined that Stiltner's mental impairment and his "illiteracy, limited vocabulary, and

memory problems" made it impossible for Stiltner file the habeas petition on time on his

own. (DE 91, Recommendation at 16-17.)

Nevertheless, the magistrate judge recommended that Stiltner' petition be denied

because he had not diligently pursued his claims even though he had legal assistance and

court-appointed counsel from the DPA during the one-year limitations period. (DE 91,

Recommendation at 21.)

Ultimately, Judge Thapar accepted the magistrate judge's recommendation and

denied Stiltner's petition (DE 95, 96). Stiltner appealed Judge Thapar's decision, and the

Sixth Circuit Court of Appeals reversed and remanded the case back to this Court.

*Stiltner v. Hart*, 657 F. App'x 513 (6th Cir. 2016). The Sixth Circuit agreed with Judge

Thapar's determination that the evidence showed that Stiltner is mentally incompetent for purposes of equitable tolling. But the Sixth Circuit found that Stiltner did in fact diligently pursue his claims to the extent he could understand them. *Id*. at 525. Thus, the court determined, the limitations period should be equitably tolled. *Id*. at 525-26.

Judge Thapar later was confirmed as a judge for the Sixth Circuit Court of Appeals, and the case was reassigned to the undersigned. (DE 113, General Order.)

In briefing on the habeas petition after remand, Stiltner's counsel clarified that Stiltner really only asserted one claim for habeas relief because the second claim (the failure to advise Stiltner of his right to appeal) was encompassed by the first claim (that his trial counsel was ineffective for advising him to enter a plea without an evaluation of Stiltner's mental status). (DE 112 at 4.) Counsel clarified that Stiltner's sole claim is that his trial counsel was ineffective for advising him to plead guilty without first evaluating whether Stiltner was mentally competent to knowingly and voluntarily make such a plea. The court will refer to this ineffective-assistance-of-counsel claim as Stiltner's IAC claim.

The magistrate judge determined that Stiltner had "procedurally defaulted" his IAC claim, meaning that the state court had determined the claim must be dismissed on procedural grounds and state law would no longer permit Stiltner to raise the claim. (DE 115, Order.) *See Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015). As the magistrate judge noted, a claim that has been procedurally defaulted in the state courts will be reviewed on the merits on habeas review if the prisoner shows "cause" and "prejudice" for failing to properly assert the claim in state court. *Id*. Accordingly, the magistrate judge conducted another evidentiary hearing, this one aimed at determining

whether Stiltner had established "cause" and "prejudice" that would excuse his failure to properly assert the IAC claim in state court. (DE 115, Order.)

The magistrate judge ordered that the hearing would also cover the merits of the IAC claim. For that claim, Stiltner must show that his counsel was deficient for failing to request a mental competency evaluation and that Stiltner was prejudiced by that failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, he must prove "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To prove prejudice, Stiltner must prove that, "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

As the magistrate judge determined, for Stiltner, this means that he must prove that he had a reasonable probability of success on a claim that he was incompetent to stand trial in 1986. (DE 115, Order at 12.)

After the hearing, the magistrate judge issued a recommendation. (DE 183, Recommendation.) As to whether Stiltner had established "cause" for failing to properly assert his IAC claim in state court, the magistrate judge noted that cause sufficient to excuse default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478 (1986). "A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

The magistrate judge noted that the majority of federal courts of appeals that have addressed the issue have determined that conditions such as "mental illness, below-average intelligence, [and] mental retardation" do not constitute cause for failing to properly assert a claim in state court. (DE 183, Recommendation at 9.) This is because these conditions are not deemed to be "external" to the habeas petitioner. (DE 183, Recommendation at 10.)

The Sixth Circuit has not addressed this precise issue. In accordance with the majority rule, however, the magistrate judge determined that "an intellectual disability cannot provide cause to excuse procedural default because it is not an objective factor external to the defense." (DE 183, Recommendation at 14.)

The magistrate judge also noted, however, that the Eighth Circuit has held that mental illness can constitute cause sufficient to excuse the failure to properly assert a claim in state court. (DE 183, Recommendation at 10.) To do so, the petitioner must make "a conclusive showing that mental illness interfered with [the] petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief." *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999). The magistrate judge also analyzed Stiltner's claim under this standard.

He determined that the time during which Stiltner could have filed a timely post-conviction motion in Kentucky state court began on May 8, 1986 – the day after his plea and sentencing. (DE 183, Recommendation at 15.) As to when Stiltner's time to pursue post-conviction relief in state court ended, the magistrate judge noted that at the time that Stiltner was sentenced there was no end date for filing motions for post-conviction relief

under Kentucky Rule of Criminal Procedure 11.42. Later, however, Kentucky adopted a three-year deadline for such motions. Ky. R. Cr. P. 11.42(10). The deadline became effective October 1, 1994.

Finding no authority on the issue, the magistrate judge determined that the deadline for filing a Rule 11.42 for someone like Stiltner who was sentenced before the deadline was enacted, would have been, at the latest, three years after the rule became effective. Thus, the magistrate judge determined the time in which Stiltner could have filed a timely post-conviction motion in Kentucky state court was May 8, 1986 (the day after his sentence) to October 1, 1997 (three years after the three-year deadline became effective). (DE 183, Recommendation at 16.)

The magistrate noted that Stiltner's only argument regarding "cause" for his failure to properly file a claim for post-conviction relief in the state court was his intellectual disability. (DE 183, Recommendation at 40.) He determined that Stiltner had failed to make *Holt*'s "conclusive showing" that his intellectual disability interfered with his ability to appreciate his position and make rational decisions during the relevant time period. Thus, Stiltner had failed to establish that his intellectual disability caused his procedural default. (DE 183, Recommendation at 42.)

The magistrate judge went on, however, to also address the merits of Stiltner's IAC claim. The magistrate judge determined that the IAC claim required Stiltner to prove that, at the time he pleaded guilty, there is a reasonable probability that the state court would have found that he was incompetent to stand trial on the date of his 1986 guilty plea. (DE 183, Recommendation at 43.) The magistrate judge determined that Stiltner had failed to make this showing.

## II.     Stiltner's objections

The Court will make a "de novo" determination of those portions of the magistrate judge's recommendation to which Stiltner objects. 28 U.S.C. § 636(b).

First, Stiltner objects to any finding by the magistrate judge that he filed either the Rule 11.42 or Rule 60.02 post-conviction motions in state court on his own. But the magistrate judge did not make this finding. The recommendation specifically states that, in filing the Rule 11.42 motion in state court, Stiltner was "assisted by a fellow prisoner." (DE 183, Recommendation at 2.) Likewise, the recommendation states that fellow inmate Scot Gaither "filed Stiltner's 2013 federal habeas petition and his Rule 60.02 motion." (DE 183, Recommendation at 27.)

Second, Stiltner objects to the magistrate judge's determination that Stiltner had not properly raised any excuse for his procedural default other than his intellectual disability. The magistrate judge determined that it was not until briefs that Stiltner filed *after* the procedural-default evidentiary hearing that Stiltner raised a claim that his procedural default should be excused because he was "abandoned" by counsel. (DE 183, Recommendation at 39.) The magistrate judge rejected this new claim finding it had been raised too "late in the game." (DE 183, Recommendation at 39.)

Stiltner asserts that he first raised the abandonment argument "on or about April 24, 2017," which was before the procedural-default evidentiary hearing. He cites to a response brief (DE 112, Response Brief) filed by his counsel on that date. (DE 184, Objections at 4.) In that response brief, in a section arguing that he had cause for his procedural default, Stiltner does state that the Department of Public Advocacy (DPA) "requested records in 1996 and 1999, did not enter its appearance until 2005 and filed

nothing until 2007. . . ." (DE 112, Response at 20.) But Stiltner argued that these actions constituted "ineffective assistance of counsel," not abandonment by counsel. (DE 112, Response at 5, 20.) The word "abandon" is not mentioned in the response brief.

Prior to the procedural-default hearing, Stiltner argued only two causes for his procedural default. In addition to ineffective assistance of counsel, Stiltner also argued that his procedural default should be excused because "[m]ental incompetence is an impediment over which Stiltner has no control, and thus, it is an external factor that caused him to be unable to comply with the slightest requirements." (DE 112, Response at 19.)

The Supreme Court has held, however, that ineffective assistance of counsel in post-conviction proceedings "cannot establish cause to excuse a procedural default because there is no constitutional right to an attorney in such proceedings." *Young v. Westbrooks*, 702 F. App'x 255, 260 (6th Cir. 2017), *cert. denied sub nom. Young v. Mays*, 138 S. Ct. 749 (2018).

Thus, Stiltner was left with only one argument to excuse procedural default: his mental impairment. Prior to the hearing, the magistrate judge issued an order advising the parties that, based on the parties' briefing, the issue regarding procedural default was "whether Stiltner's mental impairment is a sufficient ground to establish cause to overcome procedural default." (DE 115, Order at 3.)

The magistrate judge then went through an analysis as to whether mental impairments can legally constitute "cause" to excuse procedural default. He noted the Eighth Circuit's holding in *Holt* that mental impairments can constitute cause for

procedural default if the petitioner makes the "conclusive showing" discussed. (DE 115, Order at 7.)

The magistrate judge advised the parties that, should the Court adopt the *Holt* standard, a hearing was necessary to determine whether Stiltner met the standard. (DE 115, Order at 11.) Thus, Stiltner was advised prior to the hearing of the scope of it, and he never asked the magistrate judge to broaden the scope beyond that outlined in the magistrate judge's order. At one point during the hearing, Stiltner's counsel stated, "I thought. . . we were dealing with more than just his mental status during that period but also issues regarding ineffective assistance." (DE 164, Tr. at 84.) She did not mention "abandonment" by the DPA.

But even if Stiltner adequately raised an argument before the magistrate judge that Stiltner's procedural default should be excused because the DPA abandoned him, the argument fails. While the Supreme Court has determined that ineffective assistance of counsel does not excuse procedural default, it has held an attorney "abandoning" a client without warning, causing the petition to miss a deadline to file a post-conviction appeal, can establish cause for procedural default. *Maples v. Thomas*, 565 U.S. 266, 281 (2018)).

In *Maples*, the court distinguished the situation where a petitioner's attorney was ineffective from that where a petitioner's attorney abandons him. Negligence by a prisoner's attorney cannot qualify as "cause" because the attorney is the prisoner's agent, and the principal bears the risk of his agent's negligent conduct. *Id*. at 281 (citing *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991)). Thus, "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause." *Id*. Where an attorney "abandons" his client,

however, he severs the principle-agent relationship and no longer acts as the client's representative. *Id*. at 283.

In determining that Maples' attorneys had, in fact, "abandoned" him, the Supreme Court noted that the attorneys who had been the petitioner's counsel of record left their law firm before the deadline for post-conviction motions and were prohibited in their new employment (law clerk to a federal judge and employee of the European Commission) from representing Maples. *Id*. at 283-84. This prohibition ended their agency relationship with Maples. *Id*. at 284. Further, the attorneys did not seek the state court's permission to withdraw, which meant the court records reflected that the two attorneys continued to represent Maples, and that the court would send them court orders, not the petitioner. *Id.* at 284. Finally, Maples himself continued to believe he had counsel that were "able and willing to represent him." *Id*. at 289.

As Stiltner stated in his brief filed before the procedural-default evidentiary hearing, however, the DPA "was appointed to represent Stiltner in 2005." (DE 112, Response at 5.) Thus, the DPA could not have "abandoned" its client before October 1, 1997 – the deadline by which Stiltner needed to apply for post-conviction relief. Stiltner was not the DPA's client until 2005.

Stiltner points to no evidence establishing that the DPA was acting as Stiltner's attorney for the purposes of obtaining post-conviction relief prior to his deadline for filing such relief. Timothy Riddell, who worked as a defense attorney at the DPA from 1973 to 1998 (DE 164, Tr. at 79) testified at the hearing that he went to Eastern Kentucky Correctional Complex weekly to "consult with the inmates about all sorts of issues; you know, medical issues, the incarceration problem they were having, staff problems, and

also post conviction stuff." (DE 164, Tr. at 79.) On May 22, 1996, Stiltner signed two medical releases authorizing the release of his medical records to Riddell or Tina Scott, a paralegal at the DPA. (DE 90-1, Releases.) Both those releases identify Riddell as Stiltner's attorney. But Riddell testified he was only acting as Stiltner's attorney for the purpose of obtaining the medical records. (DE 164, Tr. at 99.) He testified that he was not representing Stiltner for the purpose of filing any sort of post-conviction relief. (DE 164 Tr. at 100.)

In *Maples*, the petitioner believed his attorneys who had filed the petition for post-conviction relief continued "vigilantly representing him" after it was denied. *Maples*, 565 U.S. at 271. The time to appeal the denial of post-conviction relief expired without any attorney filing an appeal on Maples' behalf. The Supreme Court excused the procedural default of the death-sentenced defendant "on the extraordinary facts of [his] case," holding that he had been "[a]bandoned by counsel [and] left unrepresented at a critical time for his state postconviction petition, and [that] he lacked a clue of any need to protect himself pro se." *Id*.

Stiltner, in contrast, points to no evidence that the DPA was representing him before the limitations period expired for filing a motion for post-conviction relief. Nor does he point to any evidence that he was relying on the DPA to file such a motion during the critical time period. Accordingly, even if Stiltner had properly raised an argument that his procedural default in state court should be excused because the DPA abandoned him before the limitations period expired for filing for post-conviction relief, the argument has no merit.

In his objections, Stiltner also argues that his trial attorney, Gene Lewter, abandoned him back in 1986 when his presentence investigation report ("PSI") was released, and Lewter took no action despite "all the red flags" regarding Stiltner's mental condition that were raised by the report. Stiltner argues that he raised this argument before the evidentiary hearing. It is true that Stiltner argued that Lewter wrongfully failed to take any action after the PSI was released. But Stiltner argued, as he did with the DPA, that these actions constituted ineffective assistance of counsel, not abandonment. (DE 112, Response at 13-15.)

Moreover, even if Stiltner had properly raised an argument that Lewter "abandoned" him after the PSI was released, that would not establish cause for his procedural default on the IAC claim. Again, Stiltner's only claim is his IAC claim – that his trial counsel (Lewter) was ineffective for advising him to plead guilty without first evaluating whether Stiltner was mentally competent to knowingly and voluntarily make such a plea. This is the claim that Stiltner procedurally defaulted. And this is the claim that Stiltner must establish cause for failing to properly raise in the state court.

Stiltner does not assert that Lewter abandoned him by failing to properly raise the IAC claim in state court. He asserts that Lewter abandoned him by failing to properly raise a mental incompetence defense after the PSI came out, either through an appeal or post-conviction motion. Even if the Court should find that Lewter abandoned Stiltner by failing to raise the mental-incompetence defense, it would not establish cause for Stiltner's failure to timely file a post-conviction motion asserting the IAC claim.

Finally, the failure to timely file an appeal or motion for post-conviction relief may indicate Lewter was "negligent, and thus ineffective, but does not show that he quit

on" Stiltner's case. *Young*, 702 F. App'x at 262. Again, "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause." *Maples*, 565 U.S. at 281. In *Maples*, in finding the counsel's actions established cause for procedural default, the court noted the "extraordinary," "uncommon," and "unusual" facts and circumstances presented by that case. *Id.* at 271, 280, 289. As Justice Alito explained, the case presented "a most unlikely combination of events" and "unique circumstances." *Id.* at 291-92 (Alito, J., concurring.)

Stiltner also argues that the magistrate judge erred by not finding that the Commonwealth of Kentucky abandoned him at various points after his indictment. The Commonwealth of Kentucky was, of course, never Stiltner's counsel. Accordingly, its actions cannot be deemed an "abandonment" of him that would establish cause for his procedural default.

For this third objection to the magistrate judge's recommendation, Stiltner argues that the magistrate judge erred by failing to find that his intellectual disability excused his procedural default of the IAC claim. Again, the Sixth Circuit has not addressed whether a mental impairment more severe than "borderline" can excuse procedural default of a claim on habeas review. *See Clark v. United States*, 764 F.3d 653, 660 n. 3 (6th Cir. 2014) ("This court has not squarely considered whether mental illness can constitute cause excusing procedural default."); *Johnson v. Wilson*, 187 F. App'x 455, 458 (6th Cir. 2006) ("Thus, we hold that a borderline mental impairment is not cause for excusing procedural default.")

The magistrate judge determined that an intellectual disability "cannot provide cause to excuse procedural default because it is not an objective factor external to the

defense." (DE 183, Recommendation at 14.) Nevertheless, the magistrate judge went on to determine that, even if the Sixth Circuit were to adopt the Eighth Circuit's *Holt* standard for determining when an intellectual disability excuses procedural default, Stiltner had failed to meet the standard. (DE 183, Recommendation at 42.)

For the reasons stated in the magistrate judge's recommendation, the Court agrees with the magistrate judge's conclusion that intellectual disability is never a factor external to the defense that excuses procedural default. Thus, the Court need not address Stiltner's objection to the magistrate judge's conclusion that Stiltner had failed to meet the *Holt* standard.

The Court also agrees, however, with the magistrate judge's conclusion that, even if the *Holt* standard were applicable, Stiltner failed to meet its requirement that he "make a conclusive showing that mental illness interfered with [his] ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued postconviction relief." *Holt*, 191 F.3d at 974. Again, the magistrate judge determined this time period in Stiltner's case was May 8, 1986 to October 1, 1997. No party has objected to that determination.

Stiltner argues that the Sixth Circuit has already determined that Stiltner met the *Holt* standard during the critical time period. This is incorrect. The issue before the Sixth Circuit was whether Stiltner's tardiness in filing a habeas petition in this Court should be excused because his impairment was so severe that 1) he was unable "rationally or factually to personally understand the need to timely file" the habeas petition; or 2) his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing." *Stiltner*, 657 F. App'x at 526.

16

This is a different question than that which is currently before the Court. The issue now before the Court is whether Stiltner has made "a conclusive showing" that his intellectual disability interfered with his ability to appreciate his position and make rational decisions regarding his case at the time during which he should have pursued post-conviction relief in state court. *Holt*, 191 F.3d at 974.

Further, the evidence before the Court is now different than that which the Sixth Circuit reviewed. The Sixth Circuit reviewed the evidence presented to this Court at the hearing on equitable tolling. At that hearing, Stiltner presented evidence regarding his mental state including the expert testimony of Dr. Eric Drogin, who examined him in 2006. The government did not present "any contrary medical records or testimony." *Stiltner*, 657 F. App'x at 518. At the procedural-default hearing, however, the government presented the expert testimony of Dr. Russell Williams in support of its position that Stiltner's intellectual disability should not excuse his procedural default.

Stiltner argues that the Magistrate Judge should not have relied on Dr. Williams' testimony because Dr. Williams did not talk to any witnesses who knew Stiltner during the relevant time period.

It is important to note, however, that the magistrate judge did not rely solely on Dr. Williams in reaching his conclusion that Stiltner had not made the "conclusive showing" required under *Holt*. The magistrate judge carefully considered all the available evidence, including all the available medical evidence.

First the magistrate judge looked at relevant medical evidence before the 1986 guilty plea at issue in this case. This evidence consisted of records regarding Stiltner's mental and intellectual status in 1959 – the year that he killed his two-year-old niece –

and during the resulting hospitalization at Eastern State Hospital. (DE 183, Recommendation at 20.) In February 1964, Stiltner scored a verbal I.Q. of 68 on the Weschler Adult Intelligence test, a performance I.Q. of 81, and a full-scale score of 72. The examiner concluded these scores were "probably indicative of dull normal intelligence." (DE 183, Recommendation at 22.)

In April 1964, physician Champ Ligon evaluated Stiltner and presented his findings to the judge presiding over the 1959 murder case. The doctor opined that "Stiltner could be returned to your court for trial. . . At the present time, he does not belong in a mental hospital…We are not set up as a prison and it is not a good policy to keep a well person in the sick ward around psychotic people." (DE179, April 1, 1964 Letter.)

More than a decade later, Stiltner was evaluated by physician Pedro Ruiz pursuant to a court order after Stiltner was arrested for escape. In a letter dated June 18, 1976, the doctor concluded that Stiltner could stand trial. The doctor noted that Stiltner functions at "below average" intellect but was nonetheless aware of the charges against him and the reason for his arrest and for prior arrests. Dr. Ruiz concluded that Stiltner's "lack of sense of guilt and/or emotional discomfort in regard to his socially unacceptable behavior makes him fall in the category of the character disorders for which psychiatric treatment can do very little, if any." (DE 181, June 18, 1976 Letter.)

There are no other psychiatric or psychological evaluations in the record until 2006, the year that Dr. Drogin, a psychologist, performed an "initial" examination of Stiltner at the request of the Kentucky DPA. (DE 1-6, Sept. 15, 2006 Letter; DE 84, Tr. at 11-12.) Dr. Drogin met with Stiltner on September 7, 2006 and administered five tests to

him. (DE 84, Tr. at 45.) He explained, however, that he "did not conduct a clinical and forensic interview." (DE 84, Tr. at 45.)

Dr. Drogin then issued a one-page letter, stating that Stiltner's IQ scores were within a range "typically associated with Mental Retardation," or what is currently referred to as an "intellectual disability." (DE 1-6, Sept. 15, 2006 Letter; DE 84, Tr. at 15.) He stated that "[s]uch levels of cognitive impairment *may* significantly interfere with a defendant's capacity to appreciate the nature and consequences of the proceedings against him, or to participate rationally in his own defense." (DE 1-6, Sept. 15, 2006 Letter) (emphasis added.)

At the hearing, Dr. Drogin explained that what he was "attempting to convey here is, by the word 'may,' I don't know if your guy is competent or not. The things I'm seeing in my testing could mean that he isn't competent, but I don't know. You have to give me more information." (DE 84, Tr. at 58.) He further explained, "what I am attempting to do is to send a message to counsel that we're not done and I am not saying he is incompetent to stand trial." (DE 84, Tr. at 58.)

Dr. Drogin cautioned that it would "be important to obtain further documentation of your client's intellectual and behavioral functioning over time, in order to arrive at any further conclusions concerning his ability to participate in plea negotiations during the period in question." (DE 1-6, Sept. 15, 2006 Letter.)

Dr. Drogin testified that "mental retardation" does not "go away." (DE 84, Tr. at 42.) But he also explained that mental retardation does not necessarily mean incompetency to stand trial or to assist an attorney. (DE 84, Tr. at 50, 51.) Dr. Drogin explained that his interaction with Stiltner "never ripened into a full-blown evaluation."

(DE 84, Tr. at 45.) He never actually diagnosed Stiltner with anything. (DE 84, Tr. at 49.)

He explained that he told the DPA at the time that "it would be important to get me some

more records if I was going to be able to do anything else with these results, because tests

are tests. They give you some useful information. But if you are going to do a forensic

psychological evaluation, you have to review other things and you have to ask other

questions." (DE 84, Tr. at 38.)

The final medical evidence in the record that the magistrate judge considered was

Dr. Williams' report and testimony. (DE 183, Recommendation at 27.)

Dr. Williams examined Stiltner on September 25, 2017 and issued a report dated

October 24, 2017. (DE 182, Report.) He evaluated Stiltner specifically to determine 1)

Stiltner's competency to stand trial in 1986 and 2) to determine whether his "mental

illness interfered with his ability to appreciate his position and make rational decisions

regarding his case during the entire period from May 8, 1986 to October 1, 1997." (DE

182, Report.)

In the report, Dr. Williams states he is "divided" on the second question. (DE 182,

Report at 14.) He states that Stiltner "possesses a chronic Axis II diagnosis of Mild

Mental Retardation." (DE 182, Report at 15.) Dr. Williams further states that "it is a

reasonable conclusion that his demonstrated intellectual deficit most likely interferes with

his ability to 'appreciate his position' as it relates to time and learning." (DE 182, Report

at 15.) In other words, Stiltner "is prone to 'live in the moment' rather than be reflective

and planning." (DE 182, Report at 15.) Nevertheless, Dr. Williams found "no evidence in

the record or through direct interview of Mr. Stiltner, to support . . . that his 'mental

illness (intellectual deficit)' interferes with his ability to make rational decisions." (DE 182, Report at 15.)

Stiltner does not argue that Dr. Williams is not qualified to render an opinion as to Stiltner's mental status during the relevant time period. He argues that Dr. Williams should have considered the opinions and observations of the four inmates who Stiltner called to testify who have known Stiltner since 1986 (Darrell Anderson, George McGinnis, Jamie Dixon, and Robert Smith.) But none of these witnesses has any training in psychology or psychiatry.

Stiltner also argues that Dr. Williams' conclusions are not supported by the results of the test that Dr. Williams administered to Stiltner. But Stiltner does not offer any expert testimony that contradict Dr. Williams. He points to the testimony of Dr. Drogin, who is clearly qualified to opine as to Stiltner's mental status, and did opine that Stiltner has a real mental impairment. But Dr. Drogin made clear that he made no final findings regarding Stiltner's mental capacity during the relevant time period, and that he would need more information to do so. Thus, the magistrate judge correctly found that Dr. Williams' opinion on this issue was "weightier than evidence to the contrary." (DE 183, Recommendation at 42.)

In addition to the medical evidence in the record, the magistrate judge, and this Court, have carefully considered other evidence in the record bearing on Stiltner's mental status during the relevant period. This includes the testimony of Stiltner himself and his fellow inmates and the documents regarding the 1986 prosecution at issue, including the PSI.

Again, the issue here is whether Stiltner has made "a conclusive showing that mental illness interfered with [his] ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued postconviction relief." *Holt*, 191 F.3d 970. The Court agrees with the magistrate judge's determination that Stiltner has not met this burden. As the magistrate judge stated, the evidence on the issue is simply inconclusive.

With his fourth objection, Stiltner argues that the magistrate judge erred in finding that he has not met his burden to show that his trial counsel – Gene Lewter – was ineffective. Again, Stiltner argues that his trial counsel was ineffective for failing to advise him to plead guilty without first evaluating whether Stiltner was mentally competent to knowingly and voluntarily make such a plea.

Because the Court has determined that Stiltner procedurally defaulted this claim and has failed to establish cause for that default, the Court need not address this issue. But, even assuming that Stiltner had established that his procedural default should be excused, the Court agrees with the magistrate judge's conclusion that Stiltner's IAC claim fails on the merits. For this claim, Stiltner must prove that his trial counsel was deficient and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In Stiltner's case, this means he must prove that there is a reasonable probability that he would have been found incompetent to stand trial had his counsel requested that he undergo psychiatric evaluation.

As the magistrate judge noted, under Kentucky law, there is a presumption that every defendant is competent to stand trial. *Short v. Com.*, No. 2013-SC-755-MR, 2015

WL 3631671, at *2 (Ky. June 11, 2015) (citing *Gabbard v. Com.*, 887 S.W.2d 547, 551 (Ky. 1994)). The magistrate judge correctly determined that Stiltner has not presented sufficient evidence in this proceeding to overcome that presumption. Thus, even if his trial counsel was deficient in not requesting a psychiatric evaluation, Stiltner has not proved that he was prejudiced by that deficiency.

Again, the medical evidence closest to the time period at issue found Stiltner to be competent to stand trial. This evidence consists of Dr. Ligon's April 1964 letter and Dr. Ruiz's 1976 report. (DE 179, 181). Further, the trial court presiding over the 1986 murder charge determined that Stiltner was competent to enter the guilty plea. This is a factual finding that is presumed correct on habeas review unless the evidence shows the finding was clearly erroneous. *See Harris v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005); *Finley v. Rogers*, 116 F. App'x 630, 635 (6th Cir. 2004); *Mackey v. Dutton*, 217 F.3d 399, 412 (6th Cir. 2000).

More recently, Dr. Williams evaluated Stiltner to make a retroactive determination as to his competency to stand trial for the 1986 murder charge. Dr. Williams concluded that Stiltner was competent. (DE 182, Report at 14.) The only medical evidence that Stiltner relies on in support of his argument that he would have been found incompetent to stand trial is the 2006 report and the testimony of Dr. Drogin. But Dr. Drogin did not conclude that Stiltner was incompetent to stand trial in 1986. Thus, the magistrate judge correctly determined that Stiltner has not established a reasonable probability that he would have been found incompetent to strand trial in 1986 had his lawyer moved for a psychiatric evaluation.

The warden also objects to the magistrate judge's recommendation, but only to the recommendation that the Court issue a certificate of appealability. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the "applicant has made a substantial showing of the denial of a constitutional right." The Court also agrees with the magistrate judge's conclusion on this issue. There can be no doubt that Stiltner has real intellectual disabilities. Reasonable jurists could find it at least debatable whether Stiltner's petition states a valid claim that he was denied effective counsel and whether this Court was correct that Stiltner procedurally defaulted that claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly, the Court hereby ORDERS as follows:

1) The magistrate judge's Recommended Disposition (DE 183) is ADOPTED by the Court;

2) Stiltner's objections (DE 184) to the recommendation are OVERRULED;

3) The Warden's objections (DE 186) are OVERRULED;

4) Stiltner's amended petition under 28 U.S.C. § 2254 for a writ of habeas corpus (DE 17) is DENIED; and

5) the Court will issue a certificate of appealability on the issue of whether Stiltner procedurally defaulted his claim that he received ineffective assistance of counsel at the time of his 1986 guilty plea on the state murder charge and on the merits of that claim.

Dated October 21, 2019

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY